**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Case No. 05-B-60123-ERW |
| | ) | Chapter 7 |
| SAMUEL P. OKNER, | ) | |
| | ) | Hon. Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | Hearing Date:  March 2, 2010 |
| | ) | Hearing Time:  10:00 a.m. CT |

**FOURTH AND FINAL APPLICATION OF SEYFARTH SHAW LLP**
**FOR COMPENSATION AND REIMBURSEMENT AS COUNSEL**
**TO CHAPTER 7 TRUSTEE GUS A. PALOIAN**

Pursuant to 11 U.S.C. §§ 330 and 331 and Federal Rule of Bankruptcy Procedure 2016, Seyfarth Shaw LLP ("Seyfarth") hereby files its Fourth and Final Application for Compensation and Reimbursement as Counsel to Chapter 7 Trustee Gus A. Paloian (the "Application") for legal services rendered and expenses incurred as counsel to Chapter 7 Trustee Gus A. Paloian (the "Trustee") during the period of time commencing on November 15, 2007 through the close of the case (the "Application Period").  In support of this Application, Seyfarth respectfully states as follows:

## I.  INTRODUCTION

1.      Seyfarth makes this Application pursuant to:  (i) Sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1330, as amended (the "Bankruptcy Code");  (ii) Rule 2016 of the Federal Rules (the "Rules") of Bankruptcy Procedure;  (iii) certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, as adopted by the Office of the United States Trustee;  (iv) Rule 5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois;  (v) that certain Order of the Court

authorizing Seyfarth's retention as counsel to the Trustee retroactive to November 22, 2005;  and (vi) other applicable case law discussed herein.

2.    In making this Application, Seyfarth respectfully seeks the entry of an order:  (A) allowing Seyfarth final compensation in the amount of $16,695.50 for legal services rendered to the Trustee during the Application Period; and (B) allowing Seyfarth final reimbursement of expenses in the amount of $1,082.01 for costs incurred on behalf of the Trustee during the Application Period.

## II.  JURISDICTION

3.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

4.    This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

5.    Venue of the above-captioned Case (the "Case") and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), (M), and/or (O).

7.    The predicates for the relief requested herein are Sections 330 and 331, as supported by Rule 2016(a) and Local Rule 5082-1.

## III.  BACKGROUND

8.    On October 15, 2005, the Debtor was involuntarily petitioned into Chapter 7 bankruptcy.

9.    On November 22, 2005, Gus A. Paloian was appointed to serve as Trustee of the Debtor's Estate and is duly-authorized and acting as such.

CH2 20230200.2

10.     On January 12, 2006, the Court entered the Employment Order, authorizing and approving Seyfarth's retention by the Trustee, retroactive to November 22, 2005.

11.     In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016, Seyfarth has received no promises for payment for services rendered or to be rendered in any capacity whatsoever in connection with the Case, other than specifically provided for in the Seyfarth Retention Order.  Additionally, other than as permitted by Section 504(b)(1) of the Bankruptcy Code and Rule 2016(a), no agreement or understanding exists between Seyfarth and any other entity for a division of compensation and reimbursement received or to be received for services rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED AND COSTS ADVANCED BY SEYFARTH

### A.  Overview

12.     This Application is Seyfarth's fourth and final fee application as counsel for the Chapter 7 Trustee in the Case.

13.     During the Application Period, Seyfarth has:  (i) provided legal services to the Trustee in the amount of $16,695.50 (the "Incurred Fees"), and (ii) advanced costs in the amount of $1,082.01 (the "Incurred Expenses") in connection with the legal services that it has provided to the Trustee.

14.     The following table consists of a breakdown of the amount of Incurred Fees by each Seyfarth professional, including each such professional's:  (i) title and location, (ii) primary practice area, (iii) hourly rate, (iv) total hours expended in providing legal services in the Case, and (v) the value attributable to such legal services:

CH2 20230200.2

| PROFESSIONAL | 2007 HOURLY RATE | 2008 HOURLY RATE | 2009 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian<br>PARTNER–CHICAGO | $545.00 | $615.00 | $640.00 | 12.20 | $7,412.00 |
| Sara E. Lorber<br>ASSOCIATE–CHICAGO | N/A | $455.00 | $480.00 | 3.40 | $1,547.00 |
| Charles S. Riecke<br>FORMER ASSOCIATE-CHICAGO | N/A | $430.00 | N/A | .40 | $172.00 |
| Jennifer M. McManus<br>PARALEGAL–CHICAGO | $220.00 | $260.00 | $270.00 | 28.40 | $7,162.00 |
| Maureen Farrell<br>PARALEGAL-CHICAGO | N/A | $265.00 | N/A | .30 | $79.50 |
| Ricki Knapp<br>PARALEGAL-CHICAGO | N/A | $245.00 | $255.00 | .10 | $24.50 |
| Nina Bouchard<br>CASE ASSISTANT-CHICAGO | N/A | $120.00 | $125.00 | 2.40 | $298.50 |
| **TOTAL:** | | | | **47.20** | **$16,695.50** |

15.     Biographies for the attorneys listed above who performed the bulk of the services in this matter were previously submitted to the Court as part of the Second Application [*See* Dkt. No. 91 at Exhibit 2]), describing their qualifications and areas of expertise.[1]

16.     During the Application Period, Seyfarth made every reasonable effort to have the services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

---

[1] Sara E. Lorber and Charles S. Riecke are no longer employed at Seyfarth.

CH2 20230200.2

17.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

18.     Seyfarth respectfully submits that its services to the Trustee during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

## B.  Time and Expense Records

19.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

## C.  Breakdown of Fees by Category of Services Rendered

20.     During the Application Period, Seyfarth provided necessary legal services to the Trustee that directly benefited the Estate.  Thus far, Seyfarth's services have enabled the Trustee to collect approximately $1,120,322.03 for the Estate.

21.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period, as follows:  (i) Case Administration;  (ii) Claims Administration and Analysis;  (iii) Rule 2004 Subpoenas and Investigation;  and (iv) Fee Applications.  Each category of services is more fully discussed below.  A detailed itemization of the time records for each category are grouped and attached hereto as **Exhibit 1**.

## Case Administration (1.80 hours valued at $481.50)

22.     During the Application Period, Seyfarth expended 1.80 hours, worth a value of $481.50, on behalf of the Trustee on matters of Case Administration, including:

A.     Review and analysis of Case information; and

5

B.   Conferences regarding, and analysis of, Case strategy, and supervision of counsel to Trustee regarding same.

23.   A breakdown of the professional services in this category is as follows:

| PROFESSIONAL | 2007 HOURLY RATE | 2008 HOURLY RATE | 2009 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $545.00 | $615.00 | $640.00 | .20 | $109.00 |
| Jennifer M. McManus PARALEGAL–CHICAGO | $220.00 | $260.00 | $270.00 | 1.0 | $257.00 |
| Maureen Farrell PARALEGAL-CHICAGO | N/A | $265.00 | N/A | .30 | $79.50 |
| Nina Bouchard CASE ASSISTANT-CHICAGO | $95.00 | $120.00 | $125.00 | .30 | $36.00 |
| **TOTAL:** | | | | **1.80** | **$481.50** |

### Claims Administration and Analysis (4.90 hours valued at $1,251.00)

24.   During the Application Period, Seyfarth expended 4.90 hours, worth a value of $1,251.50 on behalf of the Trustee in Claims Administration and Analysis, including:

A.   General claim investigation and analysis; and

B.   Final analysis of all claims for preparation of final report.

25.   A breakdown of the professional service in this category is as follows:

| PROFESSIONAL | 2007 HOURLY RATE | 2008 HOURLY RATE | 2009 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer M. McManus PARALEGAL–CHICAGO | $220.00 | $260.00 | $270.00 | 4.80 | $1,227.00 |
| Ricki Knapp PARALEGAL-CHICAGO | $215.00 | $245.00 | $255.00 | .10 | $24.50 |
| **TOTAL:** | | | | **4.90** | **$1,251.50** |

6

**Rule 2004 Subpoenas and Investigations (25.60 hours valued at $11,256.50)**

26.     During the Application Period, Seyfarth expended 25.60 hours, worth a value of

$11,256.50, on behalf of the Trustee in Rule 2004 Subpoenas and Investigation, including:

   A.     Preparation of Rule 2004 subpoenas;

   B.     Preparation of and/or participation at hearings regarding motions to conduct Rule 2004 examinations; and

   C.     Conduct Rule 2004 examination and preparation for same.

27.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL | 2007 HOURLY RATE | 2008 HOURLY RATE | 2009 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $545.00 | $615.00 | $640.00 | 10.90 | $6,703.50 |
| Sara E. Lorber ASSOCIATE–CHICAGO | N/A | $455.00 | $480.00 | 3.40 | $1,547.00 |
| Charles S. Riecke FORMER ASSOCIATE-CHICAGO | $370.00 | $430.00 | N/A | .40 | $172.00 |
| Jennifer M. McManus PARALEGAL–CHICAGO | $220.00 | $260.00 | $270.00 | 10.90 | $2,834.00 |
| TOTAL: | | | | 25.60 | $11,256.50 |

**Fee Applications (14.90 hours valued at $3,706.00)**

28.     During the Application Period, Seyfarth expended 14.90 hours, worth a value of

$3,706.00, in preparing Seyfarth's prior interim fee application [Docket No. 91], the tax

accountant's fee application and this Application.  Of the total time included within this

category, Seyfarth expended 7.40 hours, worth a value of $1,985.50, on the preparation of the

prior fee application which represents less than five percent (5%) of the total fees and expenses

requested therein.  The remaining 7.50 hours of time within this category, worth a value of

CH2 20230200.2

$1,719.50, represents less than nine percent (9%) of the total fees and expenses requested in the applications.

29.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL | 2007 HOURLY RATE | 2008 HOURLY RATE | 2009 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $545.00 | $615.00 | $640.00 | 1.10 | $599.50 |
| Jennifer M. McManus PARALEGAL– CHICAGO | $220.00 | $260.00 | $270.00 | 11.70 | $2,844.00 |
| Nina Bouchard CASE ASSISTANT-CHICAGO | $95.00 | $120.00 | $125.00 | 2.10 | $262.50 |
| TOTAL: | | | | 14.90 | $3,706.00 |

### D.  Expenses

30.     Seyfarth has advanced $1,082.01 in Incurred Expenses on behalf of the Trustee in connection with the legal services provided to the Trustee during the Application Period. Pursuant to Local Rule 5082-1(B)(1)(g), the Incurred Expenses represent the actual cost to Seyfarth of the Incurred Expenses and no additional charges have been added to their actual cost. A detailed listing of the Incurred Expenses is attached hereto as **Exhibit 2**.  In this respect, Seyfarth voluntarily reduces photocopy costs to $0.10 per page.

### IV.  BASIS FOR THE REQUESTED RELIEF

### A.  Compensation Standards and Analysis

31.     Under Section 331 of the Bankruptcy Code, any court-authorized professional "may apply to the court not more than once every 120 days after an order for relief in a case under this title . . . for such compensation for services rendered before the date of such an

application or reimbursement for expenses incurred before such date as is provided under section 330 of this title." 11 U.S.C. § 331. Seyfarth's prior interim fee application was submitted to this Court more than 120 days ago.

32.    Under Section 330(a)(1)(A), the Court may award a professional person employed under Section 327 "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A).

33.    With respect to determining a reasonable hourly rate, "Congress rejected the 'spirit of economy' notion in favor of a market approach to determining fees" in enacting Section 330(a)(1), and thereby "'expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases.'" In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting In re UNR Indus., Inc., 986 F.2d 207, 208-09 (7th Cir. 1993)); see In re McNichols, 258 B.R. 892, 905 (Bankr. N.D. Ill. 2001) (Squires, J.).

34.    In this connection, and as the Seventh Circuit held in Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir. 1993):

> The best measure of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not [working for] this [client], the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services.

Id. at 1150; see In re Palladino, 267 B.R. 825, 831 (Bankr. N.D. Ill. 2001) (Squires, J.); see also Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.") (internal quotation marks and citation omitted).

CH2 20230200.2

35.     Here, where Seyfarth bills the vast majority of its time at a set rate for paying clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is a strong presumption that such counsel could have billed out remaining time at the rate normally charged."  In re Farley, Inc., 156 B.R. at 211.

36.     Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit the debtor's estate, they should be compensable.  See In re Pro-Snax Distributors, Inc., 157 F.3d 414, 421 (5th Cir. 1998);  In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I) (2006). The determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel.  See In re Lifschultz Fast Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant).  Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases and related adversary proceedings," also support awards of compensation.  In re Spanjer Bros., Inc., 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) (Squires, J.).

37.     As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.  Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance,

and nature of the matters which they concerned.  Further, they promoted the bankruptcy process

and the administration of the Estate, in accordance with the Bankruptcy Code and Rules.

38.     For purposes of this Application, Seyfarth has computed the Fees on the basis of

its ordinary and regular hourly rates applicable to the performance of legal services unrelated to

the Case at the time that such services were rendered.

39.     During the Application Period, Seyfarth's standard hourly billing rates for

professionals providing services in this Case ranged from $370 to $545.00 for attorneys, and

from $95.00 to $270.00 for paralegals and para-professionals.  Based upon all of the foregoing,

Seyfarth respectfully submits that the fair and reasonable value of the legal services that it

rendered during the Application Period is $353.72.

40.     In all these respects, the compensation which Seyfarth has requested for rendering

legal services during the Application Period is reasonable based upon the customary

compensation charged by comparably skilled practitioners in non-bankruptcy cases.  It is the

same compensation, or less, which Seyfarth would have received for providing legal services to

its non-bankruptcy clients, and thus represents its lost opportunity costs because Seyfarth's

acceptance of employment by the Trustee in this Case precluded other employment that Seyfarth

would otherwise have obtained.

41.     In rendering legal services to the Trustee, and in making this Application,

Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not

sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v.

Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

### B.  Reimbursement Standards

42.     With respect to reimbursing expenses, the Court may award a professional person

"reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

CH2 20230200.2

43.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." In re Spanjer Bros., Inc., 191 B.R. at 749; see In re Wildman, 72 B.R. at 731.

44.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

45.     Seyfarth submits that the Incurred Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost."  In re Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584).[2]

46.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the Incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As previously discussed, the Incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added).

47.    Such "user fee" expense billing closely adheres to the Seventh Circuit's market rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation extends equally to the reimbursement of expenses, including those for online research.  See In re Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord In re Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in setting compensation for services under [330](a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimbursable expenses under (a)(2).").

48.    For example, in Continental Illinois Securities, supra, the Seventh Circuit reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket expenses of using a computerized legal research service (LEXIS).  He thought those expenses should be part of the lawyers' overhead.  This was another clear error.  If computerized research expenses were customarily treated in this fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar.  *But the more important point is that the market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead.*  Markets know market values better than judges do.  And as with paralegals, so with computerized research:  if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added);  accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research.  The court felt that the expense 'is part of the amount allowed for attorney's fees.'  *We must reverse the district court here.*  Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

49.    The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges.  See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award. *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is. We reject this claim*.") (emphasis added), <u>cert. denied</u>, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

50.     Accordingly, lower courts in this District—including numerous judges of this Court—have adhered to this controlling precedent.  <u>See, e.g.</u>, <u>Shula v. Lawent</u>, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary"); <u>Stamm v. Provident Life & Accident Ins. Co.</u>, 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation."); <u>In re Price</u>, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), <u>aff'd sub nom.</u> <u>Price v. United States</u> (<u>In re Price</u>), 42 F.3d 1068 (7th Cir. 1994); <u>In re Met-L-Wood Corp.</u>, 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), <u>aff'd</u>, 115 B.R. 133 (N.D. Ill. 1990); <u>In re Prairie Cent. Ry. Co.</u>, 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the Court to allow reimbursement of Lexis  and Westlaw research charges); <u>In re Wildman</u>, 72 B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in the original); <u>In re UAL Corp.</u>, Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 15670) (allowing full reimbursement of $8,085.93 in online legal research charges); <u>In re Eagle Food Centers, Inc.</u>, Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden,*

*Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 1136) (allowing full expense reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished decision); In re Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses* (Docket No. 6987) (allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges); In re Wickes, Inc., Case No. 04-02221-BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

51.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

52.    In seeking reimbursement for the Incurred Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## V.  CONCLUSION

53.    The Incurred Fees and Expenses all arose in connection with the Case, and in the discharge of Seyfarth's professional responsibilities to the Trustee during the Application Period. Seyfarth respectfully submits that its legal services to the Trustee, and the fees charged therefor, are in all respects reasonable, necessary, and of benefit to the Estate and its administration, and

that the expenses that Seyfarth incurred in rendering such legal services were actual and

necessary.

54.     For all of the foregoing reasons, Seyfarth respectfully submits that the relief

requested by this Application should be granted in full.

## VI.  NO PRIOR REQUEST

55.     No prior request for the relief requested by this Application has been made to this

Court or to any other court.

## VII.  RELIEF REQUESTED

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.     Allowing and awarding Seyfarth on a final basis compensation in the amount of

$16,695.50;

B.     Allowing and awarding Seyfarth on a final basis expense reimbursement in the

amount of $1,082.01; and

C.     Granting such other and further relief as this Court may deem just and

appropriate.

Dated:  January 28, 2010                          Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of  the Debtor's Estate,

By: /s/ James B. Sowka

Gus A. Paloian (6188186)
James B. Sowka (6291998)
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603-5577
Telephone:  (312) 460-5000
Fax:  (312) 460-7000

CH2 20230200.2

# EXHIBIT 1

## CASE ADMINISTRATION

| Date | Description | Attorney | Hours | Value |
|------|-------------|----------|-------|-------|
| 12/03/07 | Communication with special counsel regarding dismissal of adversary proceeding. | G. Paloian | 0.20 | 109.00 |
| 12/14/07 | Revise Service List. | J. McManus | 0.20 | 44.00 |
| 02/11/08 | Revise Service List. | J. McManus | 0.30 | 78.00 |
| 04/28/08 | Retrieve full copy of signed settlement agreement with exhibits for G. Paloian. | N. Bouchard | 0.30 | 36.00 |
| 08/22/08 | Conference with G. Paloian regarding shareholder information for Sam Okner & Associates Inc (.20); ordered copy of charter and annual report from State of Illinois (.10). | M. Farrell | 0.30 | 79.50 |
| 01/22/09 | Retrieve information on Sam Okner & Associates. | J. McManus | 0.20 | 54.00 |
| 02/20/09 | Letter to Weltman, Weinberg & Reis regarding status of case administration. | J. McManus | 0.30 | 81.00 |
| **TOTAL** | | | **1.80** | **481.50** |

CH2 20230237.1

## CLAIMS ADMINISTRATION AND ANALYSIS

| **Date** | **Description** | **Attorney** | **Hours** | **Value** |
|---|---|---|---|---|
| 11/20/07 | Conference with G. Paloian regarding claims and payment of same. | J. McManus | 0.20 | 44.00 |
| 11/26/07 | Prepare claims for interim distribution. | J. McManus | 0.30 | 66.00 |
| 12/21/07 | Claims review in preparation for case closing. | J. McManus | 0.40 | 88.00 |
| 02/22/08 | Review file regarding Alan Abrams claims (.10); review docket regarding same (.10); conference with S. Lorber regarding claims and regarding Okner family trusts (.10). | J. McManus | 0.30 | 78.00 |
| 02/26/08 | Retrieve and review 3 Abrams claims (.20); conference with S. Lorber regarding same (.10). | J. McManus | 0.30 | 78.00 |
| 03/25/08 | Review and confirm administrative claims. | J. McManus | 0.30 | 78.00 |
| 07/28/08 | Review assignment of claim filed, verify prior distributions made, verify deadline for objections. | R. Knapp | 0.10 | 24.50 |
| 09/02/08 | Run report of proposed payment of claims and previously paid claims for G. Paloian (.20); discuss same with G. Paloian (.10); assemble additional claims materials for G. Paloian (.10). | J. McManus | 0.40 | 104.00 |
| 09/24/08 | Review claims register (.10); retrieve and review claims (.30). | J. McManus | 0.40 | 104.00 |
| 09/30/08 | Continue claims review for case closing. | J. McManus | 0.30 | 78.00 |
| 11/05/08 | Claims analysis for final report purposes (.30); confer with G. Paloian regarding same (.10). | J. McManus | 0.40 | 104.00 |
| 01/09/09 | Review priority claims for case closing. | J. McManus | 0.30 | 81.00 |
| 05/21/09 | Review claims register to confirm resolution of all claims (.20). | J. McManus | 0.20 | 54.00 |
| 9/28/09 | Final review of claims, agreed orders and interim distribution amounts to confirm final distribution to claimants (.90); discuss same with G. Paloian (.10). | J. McManus | 1.00 | 270.00 |
| **TOTAL** | | | **4.90** | **$1,251.50** |

## RULE 2004 SUBPOENAS AND INVESTIGATIONS

| Date | Description | Attorney | Hours | Value |
|------|-------------|----------|-------|-------|
| 02/07/08 | Office conference with J. McManus regarding preparation of 2004 motion (.10); preparation of notice of taking deposition (.20). | C. Riecke | 0.30 | 129.00 |
| 02/07/08 | Draft Rule 2004 Motion for C. Riecke. | J. McManus | 0.40 | 104.00 |
| 02/08/08 | Two office conferences with J. McManus to give further instructions/guidance and drafting 2004 motion and its scope. | C. Riecke | 0.10 | 43.00 |
| 02/08/08 | Review file materials regarding entities to be subpoenaed (.20); prepare 2004 Motion (.70); conference with C. Riecke regarding entities to be subpoenaed (.10). | J. McManus | 1.00 | 260.00 |
| 02/21/08 | Telephone conference with M. Siegel regarding Sysix Rule 2004 and Okner ownership of Sysix stock (.30). | G. Paloian | 0.30 | 184.50 |
| 02/22/08 | Confer with J. McManus regarding motion for rule 2004 examination. (.2) Confer with G. Paloian regarding same. (.1) | S. Lorber | 0.30 | 136.50 |
| 02/25/08 | Revise Rule 2004 motion regarding Sysix. | G. Paloian | 0.30 | 184.50 |
| 02/25/08 | Conferences with S. Lorber and G. Paloian regarding motion or rule 2004 examination (.10); revise motion (.50). | J. McManus | 0.60 | 156.00 |
| 02/27/08 | Revise 2004 motion (.20); conferences with S. Lorber and G. Paloian regarding same (.10). | J. McManus | 0.30 | 78.00 |
| 02/28/08 | Revise Rule 2004 motion (.30); conference with S. Lorber regarding same (.10). | G. Paloian | 0.40 | 246.00 |
| 02/28/08 | Review and edit motion to conduct Rule 2004 examination. | S. Lorber | 0.20 | 91.00 |
| 02/29/08 | Revise Rule 2004 Motion (.20); confirm accuracy of service list and revise same (.20); cause motion to be filed with the Court (.20); oversee service of same (.10). | J. McManus | 0.70 | 182.00 |
| 03/11/08 | Conference regarding subpoenas. | G. Paloian | 0.30 | 184.50 |
| 03/11/08 | Court appearance on Rule 2004 motion. (.50); office conference with J. McManus regarding preparing document subpoenas (.20). | S. Lorber | 0.70 | 318.50 |
| 03/11/08 | Draft Rule 2004 subpoena to Sysix Corporation. | J. McManus | 0.50 | 130.00 |
| 03/12/08 | Prepare Rule 2004 Subpoenas to A. Abrams, R. Abrams and D. Okner (.80); prepare Riders to subpoenas (.80); conference with S. Lorber and W. Factor regarding same (.10). | J. McManus | 1.70 | 442.00 |
| 03/13/08 | Conferences with S. Lorber regarding subpoenas. | J. McManus | 0.20 | 52.00 |
| 03/18/08 | Revise subpoena riders relating to debtor's potential interest in Sysix corporation (.60); office conference with J. McManus regarding same. (.10). | S. Lorber | 0.70 | 318.50 |

| Date | Description | Attorney | Hours | Value |
|------|-------------|----------|-------|-------|
| 03/18/08 | Revise five Rule 2004 Subpoenas (.50); revise riders to subpoenas (.30); conference with S. Lorber regarding same (.10); assemble for service (.20). | J. McManus | 1.10 | 286.00 |
| 03/19/08 | Review Rule 45 regarding 2004 Subpoenas (.20); revise subpoenas (.30); arrange for service of same (.10). | J. McManus | 0.60 | 156.00 |
| 03/20/08 | Review e-mail correspondence from M. Siegler regarding Rule 2004 motion. | S. Lorber | 0.10 | 45.50 |
| 03/20/08 | Review correspondence from creditor regarding examination of Sysix (.10); conference with G. Paloian regarding same (.10). | J. McManus | 0.20 | 52.00 |
| 03/24/08 | Conference with S. Lorber regarding status of service on subpoena parties (.10); review affidavits of service (.10). | J. McManus | 0.20 | 52.00 |
| 03/28/08 | Review correspondence from counsel for Sysix Companies regarding response to subpoena and e-mail correspondence to G. Paloian regarding same (.10); e-mail correspondence with S. Janusek regarding status of service of various subpoenas relating to Sysix (.10). | S. Lorber | 0.20 | 91.00 |
| 04/02/08 | Conference with S. Lorber regarding subpoena responses. | J. McManus | 0.20 | 52.00 |
| 04/03/08 | Prepare Rule 2004 Subpoenas. | J. McManus | 0.30 | 78.00 |
| 04/10/08 | Conference with S. Lorber regarding Rule 2004 subpoena service and compliance. | G. Paloian | 0.20 | 123.00 |
| 04/14/08 | Communication with creditor regarding Sysix compliance with subpoena. | G. Paloian | 0.50 | 307.50 |
| 04/14/08 | E-mail correspondence with D. Cohen regarding acceptance of subpoena for Debra Okner. | S. Lorber | 0.10 | 45.50 |
| 04/18/08 | Prepare new subpoena for D. Okner. | J. McManus | 0.20 | 52.00 |
| 04/21/08 | E-mail correspondence with counsel for Sysix regarding response to Rule 2004 Subpoena. | S. Lorber | 0.10 | 45.50 |
| 04/21/08 | Reissue 2 Rule 2004 Subpoenas. | J. McManus | 0.20 | 52.00 |
| 04/28/08 | Review document produced in response to Rule 2004 subpoena. | G. Paloian | 0.70 | 430.50 |
| 04/29/08 | Review production of documents in response to Rule 2004 Subpoena. | G. Paloian | 0.70 | 430.50 |
| 04/30/08 | E-mail correspondence with counsel for Sysix regarding response to subpoena. | S. Lorber | 0.10 | 45.50 |
| 05/01/08 | Telephone conference with counsel for the Abrams regarding acceptance of service of R. Abrams subpoena (.10); confer with J. McManus regarding terminating efforts to serve same (.10). | S. Lorber | 0.20 | 91.00 |
| 05/09/08 | Review production by Abrams and Sysix regarding ownership of Sysix Stock (1.50); review settlement agreement and release (.70). | G. Paloian | 2.20 | 1,353.00 |

| Date | Description | Attorney | Hours | Value |
|---|---|---|---|---|
| 06/23/08 | Confer with G. Paloian and J. McManus regarding subpoena issued to D. Okner (.10); follow up with D. Cohen regarding same (.10). | S. Lorber | 0.20 | 91.00 |
| 06/23/08 | Prepare new 2004 Subpoena to D. Okner (.10); conference with S. Lorber regarding same (.10); draft letter to D. Cohen regarding same (.10). | J. McManus | 0.30 | 78.00 |
| 06/24/08 | Investigate production by Ms. Okner. | G. Paloian | 0.20 | 123.00 |
| 06/24/08 | Revise cover letter to D. Cohen regarding service of Okner subpoena. | J. McManus | 0.20 | 52.00 |
| 06/25/08 | Confer with J. McManus regarding D. Okner subpoena. | S. Lorber | 0.10 | 45.50 |
| 06/25/08 | Prepare and submit subpoena for service on D. Okner. | J. McManus | 0.30 | 78.00 |
| 06/27/08 | Follow-up regarding service of process on D. Okner. | J. McManus | 0.20 | 52.00 |
| 06/30/08 | Attend to service efforts on Debra Okner (.20); telephone conferences regarding service of subpoena on D. Okner (.10). | G. Paloian | 0.30 | 184.50 |
| 06/30/08 | Confer with G. Paloian and J. McManus regarding service on D. Okner and the attempts of same to evade service. | S. Lorber | 0.10 | 45.50 |
| 06/30/08 | Review file for alternate address for service on D. Okner (.20); communications with G. Paloian and S. Lorber regarding same (.10); supply S. Janusek with additional information for service assistance (. 10). | J. McManus | 0.40 | 104.00 |
| 07/02/08 | Conferences regarding service of Rule 2004 on D. Okner (.10); telephone conference with counsel for creditor regarding status (.20). | G. Paloian | 0.30 | 184.50 |
| 07/03/08 | Conferences regarding service of subpoena on D. Okner (.30); communication with creditor regarding case status (.20). | G. Paloian | 0.50 | 307.50 |
| 07/03/08 | Confer with G. Paloian regarding whether to attempt to serve D. Okner at beach house given her attempts to evade service. | S. Lorber | 0.10 | 45.50 |
| 07/11/08 | Telephone conference regarding service of subpoena on D. Okner. | G. Paloian | 0.20 | 123.00 |
| 07/14/08 | Conference with G. Paloian regarding follow-up of service on D. Okner (.10); discuss same with S. Lorber (.10). | J. McManus | 0.20 | 52.00 |
| 07/17/08 | Review documents from Sysix (.20); prepare outline of deposition questions (.20). | G. Paloian | 0.40 | 246.00 |
| 07/17/08 | Revise letter to D. Okner regarding subpoena. | S. Lorber | 0.10 | 45.50 |
| 07/17/08 | Draft letter to Debra Okner regarding complying with Rule 2004 Subpoena (.40); retrieve Settlement Agreement for G. Paloian (.10). | J. McManus | 0.50 | 130.00 |
| 07/23/08 | Conference with G. Paloian regarding response from D. Okner to Rule 2004 Subpoena. | J. McManus | 0.10 | 26.00 |

| Date | Description | Attorney | Hours | Value |
|------|-------------|----------|-------|-------|
| 07/24/08 | Telephone conference with B. Wald regarding Debra Okner subpoena compliance. | G. Paloian | 0.20 | 123.00 |
| 08/04/08 | Review documents produced by D. Okner. | G. Paloian | 0.80 | 492.00 |
| 08/07/08 | Review documents produced by D. Okner regarding ownership of stock. | G. Paloian | 0.70 | 430.50 |
| 08/08/08 | Office conferences with G. Paloian regarding status of D. Okner's compliance with Rule 2004 subpoena. | S. Lorber | 0.10 | 45.50 |
| 08/20/08 | Review documents produced by D. Okner. | G. Paloian | 0.70 | 430.50 |
| 08/21/08 | Review D. Okner production. | G. Paloian | 0.20 | 123.00 |
| 08/21/08 | Investigate Sysix stock pledge. | G. Paloian | 0.40 | 246.00 |
| 08/21/08 | Review file for additional debtor documents in preparation for deposition of D. Okner. | J. McManus | 0.30 | 78.00 |
| 12/31/08 | Telephone conference with P. Schmidt regarding investigation of Sysix stock and ownership of Sam Okner & Associates. | G. Paloian | 0.40 | 246.00 |
| **TOTAL** | | | **25.60** | **$11,256.50** |

## FEE APPLICATIONS

| **Date** | **Description** | **Attorney** | **Hours** | **Value** |
|---|---|---|---|---|
| 11/16/07 | Prepare Seyfarth's Third fee application. | J. McManus | 0.60 | 132.00 |
| 11/19/07 | Revise Third fee application. | G. Paloian | 0.60 | 327.00 |
| 11/19/07 | Review and revise fee application (.80). | J. McManus | 0.80 | 176.00 |
| 11/20/07 | Additional revisions to Seyfarth's Third Fee Application. | J. McManus | 0.50 | 110.00 |
| 11/26/07 | Prepare and revise Seyfarth Fee Application pleading portion (.90); conferences with C. Riecke regarding same (.10); organize and revise exhibits to fee application (.90). | J. McManus | 1.90 | 418.00 |
| 11/27/07 | Additional and final revisions to Seyfarth Fee Application per C. Riecke (.90); assemble exhibits (.40); prepare Notice (.30); prepare Certificate of Service (.20); cause fee application to be filed with the Court (.50); oversee service of same (.20). | J. McManus | 2.50 | 550.00 |
| 12/26/07 | Court appearance on Seyfarth's Third fee application. | G. Paloian | 0.50 | 272.50 |
| 08/04/09 | Draft Seyfarth's Fourth Fee Application. | J. McManus | 1.50 | 405.00 |
| 08/06/09 | Prepare Fourth Fee Application. | J. McManus | 0.60 | 162.00 |
| 08/11/09 | Revise Fee Application (.40); confer with N. Bouchard regarding revisions to Fee Application (.10). | J. McManus | 0.50 | 135.00 |
| 08/11/09 | Review and revise Seyfarth's fourth interim fee application for J. McManus. | N. Bouchard | 0.60 | 75.00 |
| 08/12/09 | Review and revise Fee Application. | J. McManus | 0.50 | 135.00 |
| 08/12/09 | Continue revisions to Seyfarth's Fourth interim fee application for J. McManus. | N. Bouchard | 0.70 | 87.50 |
| 08/13/09 | Multiple revisions to Seyfarth's Final Fee Application for J. McManus. | N. Bouchard | 0.80 | 100.00 |
| 08/20/09 | Revise Final Fee Application. | J. McManus | 0.60 | 162.00 |
| 09/03/09 | Revise Final Fee Application for Final Report. | J. McManus | 0.60 | 162.00 |
| 09/25/09 | Revise Final Fee Applications. | J. McManus | 0.50 | 135.00 |
| 09/28/09 | Prepare and revise Accountant Fee Application. | J. McManus | 0.60 | 162.00 |
| **TOTAL** | | | **14.90** | **$3,706.00** |

| | | | | |
|---|---|---|---|---|
| **Total Fees** | | | | **$16,695.50** |

| Task | Description | Hours | Value |
|------|-------------|-------|-------|
| A | Case Administration | 1.80 | $481.50 |
| C | Fee Applications | 14.90 | $3,706.00 |
| CC | Claims Administration and Analysis | 4.90 | $1,251.50 |
| JJ | Rule 2004 Subpoenas and Investigations | 25.60 | $11,256.50 |
| **TOTAL** | | **47.20** | **$16,695.50** |

CH2 20230237.1

# EXHIBIT 2

## DISBURSEMENTS

### Process Server

| Date | Disbursements | Value |
|------|---------------|-------|
| 05/07/08 | Process Server -  IT'S YOUR SERVE Debra Okner , Ronald Abrams, Samuel Okner and Alan Abrams | 425.00 |
| 08/05/08 | Process Server -  IT'S YOUR SERVE Debra Okner | 215.79 |

### Courier/Messenger

| Date | Disbursements | Value |
|------|---------------|-------|
| 07/17/08 | Courier/Messenger Inv#: 282998662 Date Sent: 07/17/2008 Sender: Colleen F. Tholen Airbill: 965191868615 Ms. Debra Okner 100 Timber Lane GLENCOE, IL  60022 | 13.83 |
| 12/31/08 | Courier/Messenger Inv#: 904565855 Date Sent: 12/31/2008 Sender: Colleen F. Tholen Airbill: 965191956007 Internal Revenue Service RAIVS Tem KANSAS CITY, MO 64999 | 12.41 |

### Outside Corporate Services

| Date | Disbursements | Value |
|------|---------------|-------|
| 09/10/08 | Outside Corporate Services - CORP-LINK SERVICES, INC. Sam Okner & Associates | 213.00 |

### Copying

| Date | Disbursements | Value |
|------|---------------|-------|
| 11/30/07 | Copying   (966 copies @ $0.10 per page) | 96.60 |
| 02/29/08 | Copying   (35 copies @ $0.10 per page) | 3.50 |
| 03/11/08 | Copying   (14 copies @ $0.10 per page) | 1.40 |
| 03/19/08 | Copying   (291 copies @ $0.10 per page) | 29.10 |
| 04/28/08 | Copying   (37 copies @ $0.10 per page) | 3.70 |
| 06/25/08 | Copying   (27 copies @ $0.10 per page) | 2.70 |
| 07/17/08 | Copying   (3 copies @ $0.10 per page) | 0.30 |
| 07/22/08 | Copying   (2 copies @ $0.10 per page) | 0.20 |
| 12/31/08 | Copying   (5 copies @ $0.10 per page) | 0.50 |
| 03/17/09 | Copying   (5 copies @ $0.10 per page) | 0.50 |
| 04/02/09 | Copying   (9 copies @ $0.10 per page) | 0.90 |
| 09/18/09 | Copying   (35 copies @ $0.10 per page) | 3.50 |

### Outside Printing

| Date | Disbursements | Value |
|------|---------------|-------|
| 12/29/08 | Outside Printing -  INTERNAL REVENUE SERVICE COPY FEE FOR TAX RETURN | 57.00 |

### Long Distance Telephone

| Date | Disbursements | Value |
|------|---------------|-------|
| 02/06/09 | Long Distance Telephone | 0.26 |
| 02/09/09 | Long Distance Telephone | 1.04 |
| 02/18/09 | Long Distance Telephone | 0.52 |
| 03/16/09 | Long Distance Telephone | 0.26 |

**Total Disbursements**                                            **1,082.01**

CH2 20230237.1